1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  HARIDERPAL AHLUWALIA dba            No. 2:10-cv-00712-MCE-JFM
    WALIA'S COUNTRY MARKET,
12
            Plaintiff,
13
        v.                             MEMORANDUM AND ORDER
14
    ALLIED PROPERTY AND CASUALTY
15  INSURANCE COMPANY, et al.

16          Defendants.

17                      ----oo0oo----

18

19      Before the Court is Defendants Allied Property and Casualty

20  Insurance Company's[1] and AMCO Insurance Company's ("AMCO") Motion

21  for Summary Judgment or, in the Alternative, Motion for Summary

22  Adjudication ("MSJ") (ECF No. 17.)  For the reasons set forth

23  below, the Motion is granted.

24  _____

25      [1] Defendant asserts, and Plaintiff admits, that Allied is
    not a proper Defendant to this action.  Defendants' Statement of
26  Uncontroverted Facts (ECF No. 17, Ex. 2 ¶ 8) (hereinafter
    "D-SUF"), Plaintiffs' Response to D-SUF (ECF No. 25 ¶ 8), and
27  Plaintiff's Opposition, ECF No. 24 at 11.  The parties assert
    that a dismissal motion will be forthcoming, but as of this date,
28  no such document has been filed with the Court.

                             1

1

**BACKGROUND**[2]

2

3      This action arises out of an insurance claim for property

4 damage.  Plaintiff Hariderpal Ahluwalia ("Plaintiff" or

5 "Ahluwalia") owns and operates Walia's Country Market, a mini-

6 mart and gas station, located in Redding, California.

7 (Declaration of Tony Barlogio ("Decl. of Barlogio") ¶ 2.)[3]

8 Plaintiff's business is insured under a Premier Business Owners

9 policy of insurance issued by AMCO, policy number ACP BPR

10 7831726160, with the relevant policy period being December 16,

11 2007 to December 16, 2008.  (Id., see also Exhibit "A" thereto

12 (the Policy).  The Policy generally provided coverage for damage

13 to the insured building and Plaintiff's business personal

14 property caused by a Covered Cause of Loss.[4]  (Id. at ¶ 2.)

15      On January 15, 2008, Plaintiff reported a loss to AMCO.

16 (Id. ¶ 3.)  Specifically, Plaintiff sought insurance coverage for

17 water damage to the underground fuel tanks and fuel pumps at the

18 market.  (Decl. of Barlogio, ¶ 3.)

19

---

20      [2] The following facts are the Court's determination of what

21 is undisputed based on a review of Defendants' Statement of
Uncontroverted Facts (ECF No. 17, Ex. 2) (hereinafter "D-SUF"),

21 Plaintiffs' Statement of Controverted Facts (ECF No. 25, Ex. 3)

22 ("P-SCF"); Plaintiffs' Response to D-SUF (ECF No. 25), as well as
the underlying documents referenced therein.  For the purposes of

23 this motion, all reasonable inferences are drawn in favor of the
Plaintiffs.

24

25      [3] Tony Barlogio is a former Claims Representative for AMCO
who was involved in the investigation, handling and denial

26 of Plaintiff's claims for benefits under the Policy.  (Decl. of
Barlogio ¶ 1.)

27      [4] The Policy provides for $512,200 for the replacement cost

28 of the building and $223,300 for the replacement cost of business
personal property.  (Policy, ECF No. 17, Ex. 5, at 12.)

Although the parties dispute the exact cause of the damage to the underground fuel tanks and fuel pumps, it is undisputed that the damage at issue was caused by water.[5]

///

///

---

[5] Notably, on or about January 11, 2008, Rick Cottrell, who has submitted a declaration in support of Plaintiff's Opposition to the MSJ, visited the property at Ahluwalia's request and thereafter produced a brief letter report as to his findings ("Cottrell. Ltr."), which is attached as Ex. B to the Declaration of Nicole Hampton in Support of Defendants' MSJ ("Hampton Decl."), ECF. No. 17, Ex. 3 at 20-21). According to Cottrell's Declaration, he is employed by Alpha Petroleum, and he is the individual who installed the fuel tanks and equipment at issue. (Declaration of John Cottrell ("Cottrell Decl."), ECF No. 25, Ex. 4.)

On his January 11 visit, Cottrell stated that Ahluwalia had asked to look at the fueling system, which had been "red-tagged" by Shasta County Environmental Health. (Cottrell Ltr. at p. 20.) Red-tagging prevents fuel deliveries from occurring and was apparently the result of an enforcement action by the County after Ahluwalia failed to comply with the County's underground storage tank and vapor recovery system regulations. (See Hampton Decl., Ex. A at 9, December 4, 2007, Shasta County "Notice of Violation" letter.) In his letter report, Cottrell stated that he found all the "tank sump's" [sic] and "under dispensers" were "full of water." (Cottrell Ltr. at 20.) Further, "[w]ater was spilling into the sumps over the top." Cottrell then prepared a bid "to repair piping and sumps." (Id.)

Similarly, the handwritten Shasta County "Underground Tank Inspection Report," dated January 10, 2008, states that "[s]umps & dispensers full of water." (Hampton Decl., Ex. A at 10.) The handwritten notes go on to state that "[c]annot keep ground water from filling sumps, therefore you may not operate dispensers. Stop selling fuel!" The County's report also noted that "[p]iping is in very bad condition" and "must be replaced." The report then set forth certain repair requirements. (Id.)

In his Declaration, Cottrell acknowledges that, during the course of his January 11, 2008, visit, he observed water going into the "premium pump sump." (Cottrell Decl. at 4.) While he takes issue with some of the report of Jeremy Ward (who was retained by AMCO to determine "how and in what manner water flooded the underground petroleum storage system and tanks," (see Declaration of Jeremy Ward, ECF No. 17, Ex. 4)), Cottrell does acknowledge that "he is aware of groundwater becoming an issue." (Cottrell Decl. at 5.)

1  See e.g., Plaintiff's Opposition, ECF No. 24 at 12-16; June 11,

2  2009 from J. Pickering to T. Barlogio, ECF No. 25, Ex. 12 at 3

3  ("Both sides agree that water somehow protruded or penetrated

4  into the wells.").[6]

5      In February 2008, AMCO retained the services of engineer,

6  Ali Moradi, who conducted an inspection of the property and

7  prepared a report which concluded that run off from seasonal

8  rains occurring in January 2008 had drained toward the

9  underground tanks and penetrated the top portion of the tank

10  system through the gap between the inner and outer layers of the

11  tank system.  (Id. at ¶¶ 3-4; see also id., Ex. B (February 28,

12  2008, Report of Ali Moradi ("Moradi Report") at 2-7.[7])

13      On April 18, 2008, AMCO issued a written denial of

14  Plaintiff's claim.  (Decl. of Barlogio ¶ 5, see also Ex. C

15  (April 18, 2008 letter from Barlogio to Ahluwalia (hereinafter

16  "the Declination Letter" or "Decl. Ltr.").)  In the Declination

17  Letter, AMCO stated that it had completed its investigation and

18  had determined that "the below-ground wells that house the fuel

19  pump mechanisms were partially filled with water."  (Decl. Ltr.

20  at 15.)

21  ///

22

23      [6] Ahluwalia raises a host of objections to the evidence of
   water damage.  He contests the source of the water, the
24  definition of "ground water," the reliability and accuracy of
   Defendants' experts' analysis, as well as their conclusions
25  regarding the source of the water and the nature of the damage.
   However, Plaintiff does not appear to contest that water caused
26  the property damage.  See Opposition, ECF No. 24 at 12-16; P-SCF
   Ex. 3) P-SCF (ECF No. 25, Ex. 3); Plaintiffs' Response to D-SUF
27  (ECF No. 25).

28      [7] Unless otherwise noted, references to page numbers will
   correspond to the Court's docketing pagination.

In addition, the letter asserted that both Rick Cottrell had Ali Moradi had determined that water was the cause of the damage to the fuel pump mechanisms, and that a company named American Leak Detection had also inspected the damage and determined that there were no pressurized pipe breaks that might provide an alternative theory to the conclusion that ground surface water was the source of the penetration.  (Id.)

The Declination Letter set forth certain selected language from the Policy, in particular, specific property coverage provisions and exclusions.  (Id. at 15-19.)  Among the exclusions listed were ones for damage caused by surface or ground water, as well as exclusions for defects and negligent work.  (Id. at 17.) The letter concluded that Ahluwalia's claim fell within the ground water exclusion, or was otherwise excluded on the basis of improper construction (of the pump mechanisms).  (Id. at 15.)

On June 19, 2009, Ahluwalia filed his complaint for breach of contract and declaratory relief in the Shasta County Superior Court.  (See ECF No. 1, Ex. A. (the Complaint).)  Other than stating that he is bringing a cause of action for breach of contract, Ahluwalia does not explain the basis for his lawsuit in the Complaint.  On March 25, 2010, Defendants removed this case to this Court on the basis of diversity jurisdiction.  (ECF No. 1 (Notice of Removal).)  Plaintiff did not thereafter amend his Complaint, Defendants did not file a motion to dismiss, and the parties proceeded to discovery.

///

///

///

5

1    After litigation commenced, Defendants retained an expert,

2 Jeremy Ward of SW Maintenance, who investigated Ahluwalia's claim

3 and issued a report in which he determined that the damage to the

4 underground fuel storage system was caused by (1) elevated water

5 tables caused water to crest the top of and fill the underground

6 storage tanks and pumps; and (2) the underground secondary

7 containment piping (which was defectively designed) had sustained

8 a breach allowing either ground water or sub-surface water to

9 enter the piping system and fill the underground storage tanks

10 and pumps.[8] (Id. at 6-7; see also Decl. of Jeremy Ward (Chief

11 Executive Officer of SW Maintenance), ECF No. 17, Ex. 4.)

12 ///

13 ///

14

15    [8] In his declaration, Ward notes that he was very familiar
with Ahluwalia's property, having been hired by Ahluwalia in 2006
16 "to make modifications to the underground petroleum storage
system in order to prevent ground water from cresting the tops of
17 the storage tanks, which had occurred in 2006 . . . ." (Ward
Decl. at 2 ¶ 3-6.)  In addition, Ward noted that he was familiar
18 with the secondary piping used in the construction of Plaintiff's
fuel storage tanks and produced by a company named Total
19 Containment. (Id. ¶ 4-5.)  In Ward's view, this piping "has
proven unable to withstand the high pressure from the ground
20 water and fails to keep ground water out of the system." (Id.)
Ward also noted that he had reviewed the report of the petroleum
21 storage system testing company that visited the property and been
unable to complete testing because "the sumps and dispensers were
22 full of water and ground water could not be prevented from
entering the sumps." (Id. ¶ 7; see also Hampton Decl., Ex. A at
23 10 (the "Underground Tank Inspection Report".)  Ward stated that
he had also reviewed Cottrell's report and noted that Cottrell
24 had also mentioned that he had observed water had risen above the
tops of the storage tanks. (Id. ¶ 8; see also Cottrell Ltr. at
25 20.)  Based on his experience, his review of the reports, and his
inspection of the site, Ward concluded that (1) elevated water
26 tables caused water to crest the top of and fill the underground
storage tanks and pumps; and (2) the underground secondary
27 containment piping (which was defectively designed) had sustained
a breach allowing either ground water or sub-surface water to
28 enter the piping system and fill the underground storage tanks
and pumps. (Id. ¶ 9.)

6

After the close of discovery, Defendants filed the instant Motion for Summary Judgment, contending that there were no material issues of fact in dispute and that Ahluwalia could not succeed, as a matter of law, on his contract claims.

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).  The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> A party seeking summary judgment always bears the
> initial responsibility of informing the district
> court of the basis for its motion, and identifying
> those portions of 'the pleadings, depositions,
> answers to interrogatories, and admissions on file
> together with the affidavits, if any,' which it
> believes demonstrate the absence of a genuine
> issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

///

///

7

1   If the moving party meets its initial responsibility, the

2   burden then shifts to the opposing party to establish that a

3   genuine issue as to any material fact actually does exist.

4   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5   585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

6   253, 288-89 (1968).

7   In attempting to establish the existence of this factual

8   dispute, the opposing party must tender evidence of specific

9   facts in the form of affidavits, and/or admissible discovery

10  material, in support of its contention that the dispute exists.

11  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

12  the fact in contention is material, i.e., a fact that might

13  affect the outcome of the suit under the governing law, and that

14  the dispute is genuine, i.e., the evidence is such that a

15  reasonable jury could return a verdict for the nonmoving party.

16  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

17  (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

18  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

19  "before the evidence is left to the jury, there is a preliminary

20  question for the judge, not whether there is literally no

21  evidence, but whether there is any upon which a jury could

22  properly proceed to find a verdict for the party producing it,

23  upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

24  251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson,

25  81 U.S. 442, 448 (1871)).

26  ///

27  ///

28  ///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citation omitted).

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.   Parties' Contentions**

In their Motion for Summary Judgment, Defendants contend that there are no material facts in dispute: specifically, they argue that there is no material dispute that water (either ground or surface) is the cause of the damage to the underground fuel tanks.  (MSJ at 5-8.)

///

///

Defendants assert that Plaintiff's breach of contract claim fails as a matter of law because any theory Ahluwalia could possibly assert as the cause of damage is precluded by the exclusions set forth in the policy.  (MSJ at 5-24.)  Defendants note that the original basis for their denial has, as a product of the investigation spurred by this litigation, expanded.  (See MSJ at 6.)

Defendants originally denied Plaintiff's claim on the basis that surface or ground water entered the underground fuel pumps and dispensers (see MSJ at 5; Decl. Ltr. at 15.)  However, during the course of the litigation, Defendants retained SW Maintenance, which determined that the damage to the underground fuel storage system was caused by (1) elevated water tables caused water to crest the top of and fill the underground storage tanks and pumps; and (2) defectively designed piping had sustained a breach allowing either ground water or sub-surface water to enter the piping system and fill the underground storage tanks and pumps. (Id. at 6-7; see also Decl. of Jeremy Ward (Chief Executive Officer of SW Maintenance), ECF No. 17, Ex. 4.)

///
///
///
///
///
///
///
///
///

In response, Plaintiff contends that (1) there are significant factual issues in dispute; (2) there are significant policy interpretation issues in dispute, which require resolution of disputed fact issues; (3) the reports of Ali Moradi and Jeremy Ward, which are relied on by Defendants, are unreliable; and (4) any and all reasons given by Defendants for denying Plaintiff's claim that were not included in their original denial letter should not be considered and are disputed.[9]  (Opposition at 10; Plaintiff's Objection to Evidence, Authorities and Arguments ("P-Obj."), ECF No. 25, Ex. 2.)

In his filings, Ahluwalia does not appear to offer any alternative theory as to the nature and cause of the damage. Rather, Plaintiff essentially contends that there are discrepancies and inaccuracies in Defendants' testimony, reports, and filings that constitute material issues of fact and preclude summary judgment.

///

///

///

///

---

[9] Ahluwalia's argument that an insurer cannot raise any arguments for denying coverage beyond those raised in the denial letter does not, as Ahluwalia contends, create an additional factual dispute.  (See P-Obj., ECF 25, Ex. 2.)  As Ahluwalia acknowledges (id. at 2), it is well-settled under California law that an insurance company does not waive a defense to a claim for coverage by not including that defense in the denial letter absent an express waiver, see, e.g., Wallner v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 33-34 (1995).  That the insurer gathered additional evidence and developed additional theories after Plaintiff commenced litigation is unremarkable and well within its rights to do so, absent a waiver, and Ahluwalia presents no evidence to suggest that Defendants waived their rights here.

**B.    Relevant Policy Provisions**

The Policy provides, in relevant part, as follows:

**PROPERTY COVERAGE FORM**

**A. COVERAGES.**

We will pay for direct physical loss of or damage to
Covered Property at the premises described in the
Declarations caused by or resulting from any Covered
Cause of Loss.

**1. COVERED PROPERTY**

Covered Property as used in this policy means Building
and Business Personal Property as described in
paragraphs a. and b. in this section A.1 if a Limit of
Insurance is shown in the Declarations for that type of
property. . .

a. **Buildings** meaning the buildings and structures at
the premises described in the Declarations, including
. . .

3) Permanently installed:

    a) machinery;

    b) equipment; and,

    c) tanks, including pumps

(Policy, ECF 17, Ex. 5, at 17.)

**3. COVERED CAUSES OF LOSS**

This Coverage Form insures against Risks of Direct
Physical Loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;
b. Limited in Paragraph A.4. LIMITATIONS in this
section; or,

c. Limited or excluded in Section E. PROPERTY LOSS
CONDITIONS or Section G. PROPERTY GENERAL
CONDITIONS that follow.

(Id. at 18.)

///

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.

g. **Water.**

1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

. . .

4) Water under the ground surface pressing on, or flowing or seeping through:

   a) Foundations, wall, floors or paved surfaces;

   b) Basements, whether paved or not; or,

   c) Doors, windows or other openings.

2. We will not pay for loss or damage caused by or resulting from any of the following:

. . .

j. **Other Types of Loss**

2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that cause it to damage or destroy itself; . . .

(Id. at 35, 37.)[10]

3. We will not pay for loss or damage caused by or resulting from any of the following B.3.a through B.3.d.  But if an excluded cause of loss that is listed in B.3.a through B.3.d. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

c. Negligent Work.

Faulty, inadequate or defective:

---

[10] The referenced pages of the Policy are out of sequence. Page 35 is Policy page 20, Page 37 is actually page 21, and page 36 is 22.

2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;

3) Materials used in repair, construction, renovation or remodeling;

. . .

of part or all of any property on or off the described premises.

(Id. at 36.)

## C.  Policy Interpretation Standards

It is undisputed that California law applies to this diversity action.[11]  See also, Travelers Prop. Cas. Co. of Am. v. Conocophillips Co., 546 F.3d 1142, 1145 (9th Cir. 2008) (applying California law to policy interpretation in a diversity action). Under California law, interpretation of an insurance policy "is a question of law."  Hameid v. Nat'l Fire Ins. of Hartford, 31 Cal. 4th 16 (2003).

"Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties mutual intentions."  Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992); see Cal. Civ. Code, § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.").

///

---

[11] See Opposition, ECF No. 24 at 20 (noting that both sides agree that substantive California law, particularly California's law of contracts, applies.

California law requires courts to initially look to the insurance
policy language in order to ascertain its plain meaning.
Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995) ("The
rules governing policy interpretation require us to look first to
the language of the contract in order to ascertain its plain
meaning or the meaning a layperson would ordinarily attach to
it.")  Clear, explicit, and unambiguous contractual language
governs.  Boghos v. Certain Underwriters at Lloyd's, 36 Cal. 4th
495, 501 (2005) ("'If contractual language is clear and explicit,
it governs'" (quoting Bank of the West, 2 Cal. 4th at 1264
(1992); see also Cal. Civ. Code § 1638 ("The language of a
contract is to govern its interpretation, if the language is
clear and explicit, and does not involve an absurdity.").

        If the policy terms are ambiguous, courts interpret them to
protect "'the objectively reasonable expectations of the
insured.'" Bank of the West, 2 Cal. 4th at 1265 (quoting AIU Ins.
Co. v. Superior Court, 51 Cal. 3d 807, 822 (1990).  "[I]n cases
of ambiguity, basic coverage provisions are construed broadly in
favor of affording protection, but clauses setting forth specific
exclusions from coverage are interpreted narrowly against the
insurer."  Minkler v. Safeco Ins. Co. of America, 49 Cal. 4th
315, 322 (2010) (citations omitted).  Only if these rules do not
resolve a claimed ambiguity does a court resort to the rule that
ambiguities are to be resolved against the insurer.  Bank of the
West, 2 Cal. 4th at 1264.

///

///

///

15

"The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." Minkler, 49 Cal. 4th at 322 (2010) (citations omitted).

D.   **Discussion of Policy and Claims**

It is undisputed that the Policy covered the business personal property – the fuel tanks and fuel pumps – at issue. Further, it is undisputed that the fuel tanks and fuel pumps were damaged by water.  Specifically, the record, including the declarations and testimony of Plaintiff's witnesses, is replete with evidence that the water damage was caused by some combination of (1) surface and/or sub-surface ground water entering the system, and/or (2) ground water penetrating the piping system.  At issue then is whether there are any materially disputed issues of fact as to the nature of the damage, and whether, as a matter of law, the damage was covered by the Policy.

Plaintiff contends that in interpreting the Policy, the Court must employ the "efficient proximate cause doctrine." (Opposition at 22-28.)  Under the efficient proximate cause doctrine, codified by Cal. Ins. Code § 530, "'[w]hen a loss is caused by a combination of [ ] covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss,' but 'the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause.'"

1  Julian v. Hartford Underwriters Ins. Co., 35 Cal.4th 747, 750
2  (2005); see also Cal. Civ. Code § 530 ("An insurer is liable for
3  a loss of which a peril insured against was the proximate cause,
4  although a peril not contemplated by the contract may have been a
5  remote cause of the loss; but he is not liable for a loss of
6  which the peril insured against was only a remote cause.")

7       Defendants contend that the efficient proximate cause
8  doctrine does not apply in this case because, under any theory of
9  damage that Ahluwalia could submit, the cause of damage would be
10 subject to one or more of the Policy's exclusions.  (Opposition
11 at 11-15.)  Even if the Court were to apply the efficient
12 proximate cause doctrine to the only factual issue that might
13 support it - the issue of whether there was a breach of the
14 piping as a result of water intrusion – Defendants argue that
15 there is no material dispute that any breach in the piping was
16 caused by the excluded risk (water damage).  (Id.)

17      As will be discussed in further detail below, the Court
18 concludes that the efficient proximate cause doctrine does not
19 apply because Plaintiff does not present any evidence that a
20 covered risk was the efficient proximate cause of the damage.
21 See Opposition at 11-15.  Plaintiff merely argues that there are
22 material issues of fact as to each of Defendants' theories, he
23 does not present his own theory of the cause of the damage to the
24 property at issue.
25 ///
26 ///
27 ///
28 ///

Because the Policy covered the property at issue, and because the Court finds the relevant coverage provisions to be plain and unambiguous, see Boghos, 36 Cal. 4th at 501, the Court turns to a consideration of the four exclusions relied upon by Defendants and the parties' contentions regarding each of these issues.

### 1.    Exclusion B.1.g(1) – Surface Water

Defendants contend that to the extent that Ahluwalia is claiming that the damage was caused by surface water, such damage is clearly excluded by Exclusion B.1.g(1).  Exclusion B.1.g(1) excludes "[f]lood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not."  (Opposition at 21; Policy at 37.)  Defendants originally denied Plaintiff's claim on the basis that surface water runoff from seasonal rains had intruded into the system. (See the Decl. Ltr. at 15; Moradi Report at 2-7)  However, during the course of litigation, Defendants' expert, Jeremy Ward, concluded that ground water intrusion was the more likely cause of the water damage.  (See Ward Decl.)

Ahluwalia's expert, Rick Cottrell, noted rain water entering the premium sump.  (Cottrell Decl. ¶ 12 and 21.)  Although it is not clear from his filings, Ahluwalia may be attempting to argue that rain water, and not surface water, caused the damage, which, if true, would fall outside of the surface exclusion.

///

///

However, there is no persuasive evidence that the damage to the underground tanks was sustained as a result of rainfall, and not the accumulation of water either on the surface or under the ground that penetrated the tanks.  Therefore, the Court finds there is no material issue of fact on this issue.

Regarding the interpretation of the Policy's surface water exclusion, Ahluwalia argues that: (1) there was no evidence of floods, and (2) taken in context of the entire exclusion, "surface water" must mean a large body of water and not just rain water runoff.  He does not cite to any authority for this proposition.[12]  (Id.)

Although the Policy does not define "surface water," the treatise Couch on Insurance states that surface water is:

> water diffused over the surface of the land.  Any water on the earth's surface, including water from rising groundwater, may be surface water unless or until it forms some more definite body of water.  Typically, surface water is created by rain or other precipitation.  However, though it is derived from rain, surface water is distinguished from rain by its character as water on the ground.  Rain, on the other hand, has been defined as "water falling from the sky.

///

---

[12] Ahluwalia also argues that, contrary to Defendants' expert Moradi – who concluded that surface water caused the damage – Defendants' other expert, Jeremy Ward, found ground water, not surface water was the cause of the damage.  (Id.) Moradi's report found that seasonal rainwater in January of 2008 was the possible cause of standing water on top of the tank system at issue.  (Moradi report, ECF No. 17, Ex. 6 at 2-7.). Jeremy Ward's report found that "elevated water tables in January, 2008 rose to a level causing the water to crest the top of and fill the underground storage tanks and/or sumps."  (Ward Decl. at 2.)  Ahluwalia contends these are incompatible conclusions but does not produce any evidence that rainfall does not contribute to elevating the volume of groundwater.  In other words, the Court finds these conclusions are not contradictory and does not find a material issue of fact on that issue.

> Using these definitions, damage from water flowing on
> the earth onto the insured's property, or into the
> insured's building, will generally constitute damage
> from surface water.  Damage from water naturally
> falling from the sky onto the insured's property, or
> into the insured's building, will generally constitute
> damage from rain.

Couch on Insurance, Third Ed. § 153.50 (2011) (citations

omitted).  The Court concludes that the plain language of the

Policy's surface water exclusion does not specify or imply a

large volume of water.  Furthermore, there is ample evidence in

the record that supports Defendants' surface water contention and

no persuasive evidence to support a rainfall theory over the

evidence that accumulated water, either on the surface or

underground, caused the damage to the property at issue.

Accordingly, to the extent that Plaintiff's claim is based

on damage sustained from water that accumulated and flowed onto

his business personal property and damaged it, his claim is

excluded under this section of the Policy.


**2.   Exclusion B.1.g(4) – Ground Water**


Defendants next contend that, to the extent that Ahluwalia's

claim may be based on the intrusion of ground water into the tank

system, this would be subject to Exclusion B.1.g(4).  (MSJ at 17-

21.)  Exclusion B.1.g(4) excludes: "[w]ater under the ground

surface pressing on, or flowing or seeping through:

a) Foundations, wall, floors or paved surfaces; b) Basements,

whether paved or not; or, c) Doors, windows or other openings."

(Policy at 37.)

///

1    In support of their contention that ground water was the
2 source of the damage, Defendants produced the report of Jeremy
3 Ward who visited the property and conducted an investigation,
4 which included considering the reports of Plaintiff's expert Rick
5 Cottrell, as well as the Underground Tank Inspection Report.
6 Ward concluded that the damage to the underground fuel storage
7 system was caused by (1) elevated water tables caused water to
8 crest the top of and fill the underground storage tanks and
9 pumps.[13] (See Ward Decl., ECF No. 17, Ex. 4; see also Cottrell
10 Ltr.; the Tank Inspection Report.)

11    Ahluwalia argues that "ground water" is undefined in the
12 policy and is ambiguous.  Opposition at 12, 25-26.  In addition,
13 he contends that Defendants have not sufficiently established
14 that ground water was the cause of the damage.  (Id.)  Again,
15 Ahluwalia does not offer any alternative theory for what caused
16 the damage to his property.

17    First, the Court finds that the ground water exclusion is
18 unambiguous.  The ground water exclusion itself explicitly
19 defining ground water as "[w]ater under the ground
20 surface . . . ."  Exclusion B.1.g(4).

21 ///
22 ///
23 ///
24 ///

25

26    [13] Ward also noted that another cause of the damage could
have been the result of the underground secondary containment
piping (which was defectively designed) had sustained a breach
27 allowing either ground water or sub-surface water to enter the
piping system and fill the underground storage tanks and pumps.
28 (See Ward Decl., ECF No. 17, Ex. 4.)

1  This is consistent with the common definition of ground water,

2  which is commonly defined as water beneath the earth's surface,

3  see, e.g., Webster's Third New International Dictionary 995

4  (2002) ("Water within the earth that supplies wells and springs;

5  *specif*: water in the zone of saturation where all openings in

6  rocks are filled, the upper surface of which forms the water

7  table."); Blacks Law Dictionary 1729 (9th Ed. 2004) ("Water found

8  in layers of permeable rock or soil."). Ahluwalia's bare

9  contention that the exclusion is ambiguous does not make it so.

10      Next, Ahluwalia's contention that Defendants have not

11  conclusively proven that ground water was the source of the

12  damage does not address his burden on summary judgment to show

13  that a material fact is in dispute. Here, Defendants have met

14  their initial burden of stating a basis for the Court to grant

15  their Motion for Summary Judgment, so the burden has shifted to

16  Ahluwalia to demonstrate that there are material issues of

17  disputed fact. Defendants have produced evidence of seasonal

18  rainfall, surface water, and elevated ground water as the source

19  and cause of the damage, all of which Ahluwalia disputes, but

20  again, he does not present his own theory of what caused the

21  damage or contest the essential fact that water caused the

22  damage. This is simply insufficient to preclude summary

23  judgment. Matsushita, 475 U.S. at 586-87 ("Where the record

24  taken as a whole could not lead a rational trier of fact to find

25  for the nonmoving party, there is no 'genuine issue for trial'"

26  (citation omitted)).

27  ///

28  ///

1        **3.   Exclusion 2.J(2) – The deterioration, latent defect,**
2        **quality in property and Exclusion B.3.c – Faulty,**
         **inadequate or defective design, workmanship or**
3        **materials used in construction.**

4        In the event that Ahluwalia is contending that the damage

5   was caused by the system piping, Defendants argue that such

6   damage would be excluded under either or both of Exclusions

7   2.J(2) or B.3.c.)  (MSJ at 21-23.)  Exclusion 2.J(2) excludes, in

8   relevant part, "[r]ust, corrosion, fungus, decay, deterioration,

9   hidden or latent defect or any quality in property that cause it

10  to damage or destroy itself; . . . .  Exclusion B.3.c, "Negligent

11  Work," excludes [f]aulty, inadequate or defective:" "2) Design,

12  specifications, workmanship, work methods, repair, construction,

13  renovation, remodeling, grading, compaction, failure to protect

14  the property" as well as "3) Materials used in repair,

15  construction, renovation or remodeling;" . . . of part or all of

16  any property on or off the described premises."

17       Here, Defendants note that their expert, Jeremy Ward, as

18  well as the company that prepared the inspection report for

19  Shasta County, found that the Total Containment piping was

20  deteriorated and, in the opinion of Ward, was probably defective

21  based on his experience with that brand of piping used in similar

22  locations.[14]  (Id. at 21-22.)  In addition, defendants note that

23  water was the primary cause of the damage to the pipes, breaching

24  the pipes and flooding the system.  (Id.; see also Ward Decl. at

25  ¶ 9.)

26  _____

27       [14] Defendants note that the reason no one has definitively
    determined whether the piping was defectively designed is because
28  the piping would have to be dug up and inspected, which has not
    been done.  (See Reply at 4-5.)

                                    23

1  In Defendants' view, Plaintiff's claim could be denied on the
2  basis that the piping at issue was deteriorated or was
3  defectively designed.  (Id. at 21-22.)

4      Ahluwalia argues that Ward's report is unreliable because it
5  is contradicted by Cottrell's report and there is a factual
6  dispute as to which piping (primary or secondary) is subject to
7  deterioration.  (Opposition at 26.)  Ahluwalia goes on to argue
8  that there are various fact issues: e.g., was the defect latent?
9  (Id. at 27).  He also contends no witnesses testified that the
10 piping was installed negligently and the evidence does not
11 support the conclusion that the piping was defective or
12 deteriorating.  (Id. at 27-28.)

13     Here again, the Court finds there are no material issues of
14 fact in dispute and the Policy language is clear and unambiguous.
15 Once again, Ahluwalia has not clearly stated whether he is even
16 arguing that defective piping caused the damage at issue and he
17 has not presented persuasive evidence that there are any disputed
18 issues of material fact as to the piping.  Defendants have set
19 forth sufficient facts to support the conclusion that the piping
20 was deteriorated and more than likely was defective.

21     In sum, the Court concludes that no rational trier of fact
22 could find for Ahluwalia.  Matsushita, 475 U.S. at 586-87 ("Where
23 the record taken as a whole could not lead a rational trier of
24 fact to find for the nonmoving party, there is no genuine issue
25 for trial." (quotation and citation omitted)).  Ahluwalia never
26 expressly states exactly what property was damaged, how he
27 believes the property was damaged, or what he believes caused the
28 damage.

24

1    In contrast, Defendants have set forth specific facts that
2    support the conclusion that, as a result of either surface water
3    or groundwater, the underground fuel tanks and fuel pumps
4    (specifically the sumps) were damaged.  Defendants also have
5    presented facts that support the conclusion that decayed or
6    defective piping was at issue.  Defendants then demonstrate that
7    each of these issues would be subject to exclusions that are
8    clearly and unambiguously set forth in the Policy.

9        The Court must draw all reasonable inferences in favor of
10   Ahluwalia.  Anderson, 477 U.S. at 255.  However, inferences are
11   not drawn out of the air, and it is the opposing party's
12   obligation to produce a factual predicate from which the
13   inference may be drawn.  Richards, 602 F. Supp. at 1244-45.
14   Here, the Court concludes that Ahluwalia has not presented any
15   reasonable alternative to the facts as set forth by the
16   Defendants, much less established that there are any material
17   disputed issues of fact.  Nor has he demonstrated that the
18   Policy, particularly the exclusions at issue, are anything other
19   than plain and unambiguous.  The inescapable conclusion is that
20   the property at issue was damaged by either surface or ground
21   water and is therefore subject to the referenced exclusions.
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

**CONCLUSION**

As a matter of law, and for the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED.[15]  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: July 5, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[15] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).